## ZUFALL v. PEYTON.

No. 497.   Opinion Filed July 12, 1910.

(110 Pac. 773.)

1.   **VENDOR AND PURCHASER—Remedies of Vendor—Lien—Defenses.** A defendant in a suit to foreclose a vendor's lien reserved in an administratrix's deed purporting to convey to him certain lands of which he is in possession may resist the payment of the balance of the purchase money upon the ground that said administratrix's deed was void, but must, in order to avail himself of that defense, offer to restore the premises, together with the rents and profits accruing during the time possession was withheld.

2.   **EXECUTORS AND ADMINISTRATORS — Sale of Property—Validity.** A purchaser at an administrator's sale has a right to suppose that by his purchase he will obtain the title of the decedent, and, if the order of sale is void, then his bid or other promise to pay is without consideration and cannot be enforced.

(Syllabus by the Court.)

*Error from District Court, McIntosh County; Preslie B. Cole, Judge.*

Action by Margaret Zufall, administratrix of Oscar O. Zufall, or Otto Zufall, deceased, against Masterson Peyton. From a judgment in favor of defendant, plaintiff brings error. Reversed and remanded.

*N. B. Maxey* and *Chas. F. Runyan,* for plaintiff in error.—On necessary pleading for rescission: *Pugh v. Stigler,* 21 Okla. 854.

*Horace Speed, R. B. Turner* and *W. C. Leidke,* for defendant in error.—On applicability of doctrine of *caveat emptor;* Maupin on Marketable Title to Real Estate, pp. 82, 83; 24 Cyc. pp. 65, 72; *Thompson v. Tolmie,* 2 Pet. 157.

KANE, J.   This action was commenced by the plaintiff in error, Margaret Zufall, administratrix of the estate of Oscar O., or Otto, Zufall, deceased, as plaintiff, against Masterson Peyton, the defendant in error, as defendant, for the purpose of foreclos-

ing a vendor's lien reserved in an administratrix's deed executed
by the plaintiff to the defendant. The petition alleged, in sub-
stance, that the plaintiff is the duly acting administratrix of the
estate of said decedent by appointment of the United States court
for the Western District of the Indian Territory, at Muskogee, and
that said probate matter was at the time of the commencement of
said suit pending in the county court of McIntosh county, state
of Oklahoma, by virtue of its being the successor of the United
States court for the Western District of the Indian Territory; that
the said decedent at the time of his death was a member of the
Cherokee Tribe of Indians, and that out of the lands of said tribe
there had been allotted to him certain described lands, aggregat-
ing 90 acres; that the said land at the time of the sale was located
in the Western District of the Indian Territory, and that the
United States court at Muskogee had jurisdiction thereof; that
the said decedent died, leaving certain debts outstanding against
the estate, and that this plaintiff, acting under an order of the
said United States court at Muskogee, offered for sale the said
lands belonging to the said estate after the same had been duly
advertised as required by law on the 22d day of August, 1906, at
the hour of 1 o'clock p. m., in the town of Checotah, in the
Western District of the Indian Territory; that at said sale the
said lands were bid off by Masterson Peyton, the defendant, for
the sum of $1,650, he being the best and highest bidder therefor;
that the said Masterson Peyton paid to this plaintiff the sum of
$550, one-third of the purchase price, and that the administratrix
executed to the said Masterson Peyton an administratrix's deed
to said lands, which was duly confirmed by the court on the 25th
day of August, 1906, wherein she reserved a vendor's lien on said
lands for the balance of the purchase price, which remained un-
paid in the sum of $1,100, which was evidenced by a promissory
note of even date therewith, due in six months after date with
interest at 6 per cent. per annum, from date.

Thereafter the defendant filed his answer, in which he sought
to make Margaret Zufall, as administratrix, Margaret Zufall indi-
vidually, Pearl Zufall, Maggie Zufall, Lewis Zufall, George Zufall,

and Grace Zufall, and Herbert Zufall, minors, as the sole heirs of the said decedent, parties defendant, and alleged as a defense to the action instituted by the plaintiff that the United States court for the Western District of the Indian Territory at Muskogee did not have jurisdiction of the real estate belonging to the said decedent, and therefore did not possess the authority to order a sale of said lands, and that the sale so ordered was void, because under the treaty between the United States government and the Cherokee Indians, which provided for the allotment of the lands of said tribe, the said lands could not be sold by the allottee, nor taken for debts against his estate for a period of five years from the approval of the said agreement, and that the said period of five years had not expired, and therefore the said lands belonging to the decedent were not subject to the payment of debts against his estate; that said court was without authority to confirm the sale of said lands, and that the confirmation so made was void; that, as he did not obtain any title under said sale, said court ought not to foreclose said vendor's lien against him; that he was not liable under the law for the payment of the balance of the purchase money, and that he was entitled to have judgment against the said administratrix, and against the heirs which he sought to be made parties defendant, for the sum of money he had paid to this plaintiff as a one-third of the purchase price thereon, and a lien for said amount on the lands in controversy, and he prayed that said lien be enforced, and said lands be sold for the payment and satisfaction of said lien.

Thereafter the plaintiffs, made defendants in the cross-petition of the defendant, filed their reply and answer to the cross-petition, denying all the material allegations of the defendant's answer and cross-petition, and set up as an additional defense thereto that, if the sale so made was void, it had been ratified by the execution of quitclaim deeds from all of the adult heirs of the said decedent, and prayed as in the original petition.

Thereafter the defendant filed his reply, wherein he denied that the adult heirs of the said decedent could legally confirm the title to said lands in him, because two of the said defendants were

minors, and that the restrictions were still upon said lands, and that even the adult heirs were unable to make a valid conveyance thereof.

Said cause was submitted to the court upon said pleadings without a jury, and at the time of the hearing the plaintiff and the defendants upon cross-petition moved the court for leave to withdraw all pleadings except said petition, cross-petition, and answer, which was allowed by the court, and thereupon, in open court, the plaintiff and defendants on cross-petition filed their demurrer to the answer and cross-petition of the defendant. The demurrer alleged that said answer and cross-petition did not contain facts sufficient to constitute a defense to the amended petition theretofore filed in said cause, and prayed for judgment as in the original petition. The court thereupon overruled the demurrer of the plaintiff, and of the defendants on cross-petition, to the answer and cross-petition of defendant, and gave judgment in favor of the defendant for the sum of $725.67, which was the amount that he had paid to the said administratrix, with interest thereon, from the date of payment, less the rents and profits which he had received from said lands while he had had the possession of the same; and the court decreed that Masterson Peyton was divested of the title of said lands by virtue of the administratrix deed and the quitclaim deeds executed by the heirs of said decedent, and that the same was again invested in the heirs of said decedent. To reverse this judgment and decree this proceeding in error was commenced.

Counsel for plaintiff in error contend that: (1) "A vendee, having received a deed and the possession of land, cannot resist the payment of the balance of the purchase money, when the title of the vendor has failed, and cannot avail himself of that defense, unless he offers in his pleadings to rescind the contract and restore the premises to the vendor." (2) That "at a judicial sale the doctrine of *caveat emptor* applied, and, after the confirmation thereof, the purchaser is estopped from denying that he received good title." The first of these propositions seems to be sustained by *Pugh v. Stigler*, 21 Okla. 854, 97 Pac. 566. In that case Stigler sued

Pugh in the United States court in the Indian Territory at Poteau
to recover a balance of $300, with interest, alleged to be due as
purchase money on a sale of land.   The petition stated, in sub-
stance, that on the 19th day of August, 1904, defendant purchased
of the Midland Valley Land Company certain lots situated in the
town of Stigler, Ind. T., and agreed to pay therefor the sum of
$600, paying thereon $300, and agreeing to pay the remaining
$300 within one year; that the contract was in writing, in which
it is stipulated that the Midland Valley Land Company retained
the title to the property and a lien upon all the buildings and
improvements put on the property by the grantor or his assigns
until all the deferred payments had been made, after which he
agreed to deliver to the grantee, or his assigns, a warranty deed
to the property; that the lots were a part of the homestead allot-
ment of Ellis Jefferson, deceased, and were conveyed for a valu-
able consideration by the adult heirs of Ellis Jefferson to J. W.
McCloud, and from him to the Midland Valley Land Company;
that it on the 15th day of May, 1905, conveyed to plaintiff all its
right, title, and interest in the property, and that defendant has
been in possession ever since the execution of the bond; that since
the maturity of the bond a warranty deed conveying the property
has been tendered the defendant; that he has failed and refused
to make the remaining payment.   Plaintiff prayed judgment for
$300, and that the same be declared a lien on the premises.   The
defense was that the land in controversy was allotted to Ellis
Jefferson, deceased, a duly enrolled Choctaw Indian by blood, and
was commonly called a "dead claim"; that the restrictions upon
the alienation of said land had never been removed from any of
the heirs of said Ellis Jefferson, who were full-blood members of
said tribe; that no patent had issued in the name of Ellis Jefferson.
The prayer to the court was that the contract be rescinded, and
for judgment against the Midland Valley Land Company for
$2,800, for breach of contract, and that the judgment be declared
a lien upon the land, and for costs.   Mr. Justice Turner, who
delivered the opinion for the court, said:

"It will be observed that the cross-petition discloses a prayer

for a rescission of the contract upon the ground that the vendor had no title to convey, but the vendee makes no offer to restore the premises to the vendor. Therefore judgment should be rendered on this pleading in favor of the plaintiff, if its allegations are insufficient to sustain a judgment for the defendant."

The second paragraph of the syllabus is as follows:

"A vendee, having a bond for title and in possession of the land, may resist the payment of the purchase money when the title of the vendor has failed, but must, in order to avail himself of that defense, offer to rescind and restore the premises to the vendor."

In the case at bar, there is no offer to restore the premises to the vendor, although the effect of 'the prayer, if granted, would be to rescind the administratrix's deed, and to grant to defendant affirmative relief in the way of a judgment against the defendants Margaret Zufall, as administratrix, and individually, for the sum of $725, with interest, and a decree making said judgment a lien upon the premises. It is true that by the judgment of the court the defendant, Masterson Peyton, was ordered to surrender possession of the land in controversy to Margaret Zufall, administratrix, but there is no allegation in the pleadings to support this part of the judgment. Moreover, a surrender of possession will not restore in *statu quo;* the rents and profits during the time possession was withheld must be definitely ascertained, and credit therefor given. The pleadings as they stand are not sufficient to do this.

On the second proposition, we cannot agree with counsel for plaintiff in error. It is true the answer of the defendant constituted a collateral attack upon the administratrix's deeds, but, if there was a total want of jurisdiction of the subject-matter, the proceedings are void and a mere nullity, and confer no rights, and afford no justification, and may be rejected when collaterally drawn in question. *Thompson v. Tomlie et al.*, 2 Pet. 157, 7 L. Ed. 381. The doctrine of *caveat emptor* as it applies to judicial sales is based upon the theory that the purchaser buys only such estate or interest as his debtor has, and he is bound to take notice of what that interest is. In the case at bar, however, notwithstanding the order of sale and the execution of the deed thereunder, the title

to the land remained in the heirs at law of the decedent, and, if the rule of *caveat emptor* is strictly applied they will not only retain the title to the land, but recover the purchase price also. Mr. Freeman, in his work on Void Judicial Sales, § 48, in discussing a similar situation, says:

"Every purchaser has a right to suppose that by his purchase he will obtain the title of the defendant in execution, in cases of execution sales, and of the ward or decedent in the case of a guardian's or administrator's sale. The promise to convey this title is the consideration, upon which his bid is made. If the judgment or order of sale is void, or if, from any cause, the conveyance, when made, cannot invest him with the title held by the parties to the suit or proceeding, then his bid, or other promise to pay, is without consideration, and cannot be enforced. He may successfully resist any action for the purchase money, whether based upon the bid or upon some bond or note given by him. It has been held that the rule *caveat emptor* does not apply to cases in which the court had no jurisdiction to direct the sale at which the purchaser bid, and that in such a case the purchaser might have restitution of the purchase money even after confirmation of the sale. And generally it has been held that a purchaser at a judicial sale which is void for want of jurisdiction in the court to order the sale, or for other cause, may resist the payment of the purchase money, even after the purchaser's bid had been accepted by the court. There can be no confirmation of that which is void. Maupin on Marketable Title to Real Estate (2d Ed.) p. 82. Mr. Maupin, further discussing the same subject, on page 128, says: 'These principles address themselves to our sense of equity and right, and many cases may be found which sustain them. But it is not to be denied that they strongly encroach upon, and are perhaps inconsistent with, the doctrine of *caveat emptor,* as applied to execution sales.'"

This is a suit in equity and the admitted facts, it seems to us, are such that it would be inequitable to grant the plaintiff the relief prayed for. Courts of equity sometimes even after the payment of the money bring the parties before them upon the suggestion of fraud, misapprehension, surprise, or other ground of equitable relief, and direct the sale to be vacated. Freeman on Void Judicial Sales, § 48.

The judgment of the court below is reversed and the cause

remanded, with directions to proceed in conformity with this opinion.

All the Justices concur.